# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 174 | **DATE** | 8/16/2004 |
| **CASE TITLE** | Carl Fields, et al vs. Barry Maram | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] This court's minute order of 6/17/04 dismissing as moot the motion to maintain class action is vacated and motion to maintain class action [10-1] is reinstated ENTER MEMORANDUM OPINION AND ORDER: Plaintiffs' motion for class certification [10-1] is granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | 8/17/04 | |
| ✓ | Docketing to mail notices. | date docketed | 35 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |

U.S. DISTRICT COURT
CLERK

2004 AUG 16 PM 12: 43

Date/time received in
central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARL FIELDS, RAPHAEL JACKSON, | ) | |
| JAMES GALLAGHER, by and through | ) | |
| his sister and next friend, Sue Corrigan, | ) | Case No. 04 C 0174 |
| ED SCHNEIDER, ROEL VILLAREAL, | ) | |
| and KEVIN WILSON, on behalf of | ) | Judge Mark Filip |
| themselves and all others similarly situated, | ) | Magistrate Judge Nolan |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | AUG 1 7 2004 |
| | ) | |
| BARRY MARAM, in his official capacity | ) | |
| as the Director of the Illinois Department of | ) | |
| Public Aid, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

AUG 1 7 2004

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

Plaintiffs Carl Fields, Raphael Jackson, James Gallagher, by and through his sister and

next friend, Sue Corrigan, Ed Schneider, Roel Villareal, and Kevin Wilson, ("Plaintiffs" or "the

named Plaintiffs"), six disabled Medicaid recipients residing in Illinois nursing homes, have sued

Defendant Barry Maram, in his official capacity as the Director of the Illinois Department of

Public Aid, in this putative class action. Plaintiffs allege that Defendant has a policy of refusing

to provide medically necessary motorized wheelchairs to disabled nursing home residents

receiving Medicaid (while providing such wheelchairs to disabled individuals living in the

community). Plaintiffs claim that Defendant's alleged policy violates Title XIX of the Social

Security Act, 42 U.S.C. §§ 1396-1396v, and they seek declaratory and injunctive relief under 42

U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section

35

504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Plaintiffs have moved to certify a class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). For the reasons stated below, the motion for class certification is granted.

## BACKGROUND

Three of the named Plaintiffs initiated this suit on January 12, 2004 and moved for class certification on February 23, 2004. Three more named Plaintiffs were added in an amended complaint that was filed on March 4, 2004, and, that same day, a revised motion for class certification was filed. Plaintiffs, who range in age from 26 to 63, allege that they all have quadriplegia or other severe physical disabilities that prevent them from ambulating and generally confine them to their beds in the Illinois nursing homes in which they reside. (D.E. 8, ¶¶ 2, 7-12.) These nursing homes, as well as others in Illinois, "receive payments as providers of goods or services to persons eligible for medical assistance from the State of Illinois." (D.E. 14, at 4; D.E. 8, ¶ 2.) At the time Plaintiffs filed their complaints and moved for class certification, none of the Plaintiffs had been provided with a motorized wheelchair by Defendant.[1] After Plaintiffs filed this suit and moved for certification of a class, Defendant provided each of these six Plaintiffs with a motorized wheelchair.[2]

---

[1] One of the Plaintiffs, Ed Schneider, with financial help from his son, purchased a used motorized wheelchair approximately four years ago. (D.E. 8, ¶ 35.) However, he alleged that this second-hand wheelchair would break down periodically and, as of the time the complaint was filed, would soon become permanently inoperable. (*Id.*)

[2] Defendant asserted that he provided motorized wheelchairs to five of the Plaintiffs and that the "sixth named Plaintiff" is living in the community. (D.E. 33 at 5.) Defendant has not identified this "sixth named Plaintiff" or provided any evidence that this Plaintiff is living in the community. Plaintiffs admit that they all have received motorized wheelchairs since the Complaint was filed and they sought certification but dispute Defendant's contention that one of them is living in the community. (D.E. 34 at 3 & n.2.)

Plaintiffs assert that, although Defendant provides motorized wheelchairs to disabled Medicaid recipients living in the community, Defendant has a policy of refusing to provide medically necessary motorized wheelchairs to disabled nursing home residents, (D.E. 8, ¶ 4), (notwithstanding Defendant's post-lawsuit provision of such wheelchairs to the named Plaintiffs). As support for their contention that Defendant maintains this alleged broad discriminatory policy, Plaintiffs have submitted a June 15, 2002 letter from Linda K. Lynn, the Supervisor of Durable Medical Equipment & Ancillary Services for the Illinois Department of Public Aid, to Apria Healthcare, in which Ms. Lynn states "that power w/cs [wheelchairs] are not approved for clients in nursing homes." (D.E. 24, Exhibit A.) On March 16, 2004 (subsequent to the initiation of this suit and the motions for class certification), the Department of Public Aid issued an "Informational Notice" which states that "[t]he Department evaluates requests for custom power wheelchairs for Medicaid-eligible clients strictly according to medical necessity, regardless of residency." (D.E. 17, Exhibit B (emphasis removed.))

Plaintiffs seek to certify a class "of all persons with disabilities who are or will be recipients of Illinois' Medicaid program, who reside in Medicaid-funded nursing homes and for whom motorized wheelchairs are medically necessary, but who have not been provided with such equipment." (D.E. 10 at 1.) On March 9, 2004, this Court issued a minute order requesting that the parties file briefs regarding "how the medical necessity issue would be administered" if the case were to be certified as a class action. (D.E. 11.) In response to the Court's order, Plaintiffs filed a brief stating that they "do not challenge how Defendant determines 'medical necessity' for motorized wheelchairs but rather seek to ensure this determination is made for nursing home residents." (D.E. 13 at 1; *see id.* at 4 ("Thus, because the propriety of the evaluation is not at

issue here, it is unnecessary and inappropriate for the Court to determine the 'medical necessity' of class members for motorized wheelchairs, whether during class certification or at any other time.")) Plaintiffs have requested that the Court "issue a declaratory judgment that Defendant's acts or omissions violate Title XIX of the Social Security Act, Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act." (D.E. 8, Prayer for Relief.) In addition, Plaintiffs have also requested that the Court "issue preliminary and permanent injunctive relief to enjoin Defendant from denying Plaintiffs and class members necessary motorized wheelchairs and from failing to ensure that nursing facilities provide such wheelchairs." (*Id.*)

For purposes of showing the size of the potential class, Plaintiffs have pointed the Court to the Minimum Data Set of the Centers for Medicare and Medicaid Services of the U.S. Department of Health and Human Services ("Minimum Data Set"), which is located at http://www.cms.hhs.gov/states/mdsreports/res3.asp?. According to the Minimum Data Set, in the first quarter of 2004, there were 78,083 persons residing in Illinois nursing homes. *See* http://www.cms.hhs.gov/states/mdsreports/res2.asp , at "Resident Counts by State." Of these, approximately 15,672 were totally dependent on others to leave the room (even with a wheelchair), 1,637 were "bedfast all or most of the time," and 465 have quadriplegia.[3] *See id.* at G1eA, G6a, I1z. More than half of Illinois nursing homes residents receive Medicaid. *Id.* at A7a.

---

[3] These numbers were derived by Plaintiffs by taking the number of nursing home residents for whom data on the particular subject was available (which was generally one or two thousand less than the full 78,083 nursing home residents in Illinois), and multiplying that number by the relevant percentage provided in the Minimum Data Set.

On April 7, 2004, Defendant moved to dismiss the complaint on grounds that Plaintiffs have not stated claims under Title XIX, the ADA, or the Rehabilitation Act. (D.E. 17.) In his brief in opposition to class certification, Defendant stated that "[i]f Plaintiffs are found here not to have enforceable rights and their claims were dismissed, the basis for the Court's ruling would apply equally to any other member of the class." (D.E. 14 at 4.)

## LEGAL STANDARD

"[A] district court has broad discretion to determine whether certification of a class is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Nonetheless, a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of" the rule governing class actions, Federal Rule of Civil Procedure 23, have been satisfied. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n*, 7 F.3d at 596. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotation omitted).

## DISCUSSION

Under Rule 23, an action may be maintained as a class action if all of the prerequisites of Rule 23(a) and at least one of the three elements of Rule 23(b) are satisfied. *See* Fed.R.Civ.P. 23. Rule 23(a) contains four express mandatory requirements. *Id.* First, the class must be so numerous that joinder of all members is impracticable ("numerosity"). Second, there must be questions of law or fact common to the class ("commonality"). Third, the claims or defenses of

the representative parties must be typical of the claims or defenses of the class ("typicality"). Fourth, the Court must be satisfied that the representative parties and their counsel will fairly and adequately protect the interests of the class ("adequacy"). *Id.* In addition, "there is a 'definiteness' requirement implied in Rule 23(a)" which dictates that "the description of a class [be] sufficiently definite to permit ascertainment of the class members." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). Of the three alternative provisions of Rule 23(b), Plaintiffs are seeking to proceed under subsection (b)(2), which allows for certification where the requirements of Rule 23(a) have been met, and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). For the reasons set forth below, the Court has concluded that Plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(2).

A.      Numerosity

"The crux of the numerosity requirement is not the number of interested persons per se, but the practicality of their joinder into a single suit." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. Feb. 28, 1996) (quoting *Small v. Sullivan*, 820 F. Supp. 1098, 1109 (S.D. Ill. 1992)). "When determining whether joinder is impracticable, the court considers not only the size of the class, but also its geographic dispersion, the relief sought, and the ability of individuals to bring their own claims." *Flanagan v. Allstate Ins. Co.*, No. 01-1541, 2004 WL 1403817, *2 (N.D. Ill. June 22, 2004). "'Impracticable' does not mean 'impossible,' but rather, extremely difficult and inconvenient." *Danis v. USN Communications, Inc.*, 189 F.R.D. 391, 399 (N.D. Ill. 1999); *accord, e.g., Wilson v. Collecto, Inc.*, 03-4673, 2004

WL 432509, *2 (N.D. Ill. Feb. 25, 2004). "While there is no threshold number required to prove numerosity, 'permissive joinder is usually deemed impracticable where the class members number 40 or more.'" *Id.* (quoting *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995)). "The exact number of class members need not be pleaded or proved, but impracticability of joinder must be positively shown, and not merely speculative." *Wilson*, 03-4673, 2004 WL 432509 at *2 (quoting *Keele v. Wexler*, No. 95-3483, 1996 WL 124452, at *3 (N.D. Ill. Mar. 19, 1996), *aff'd* 149 F.3d 589 (7th Cir. 1998)). "[T]he court is able to make common-sense assumptions in determining numerosity." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002); *accord, e.g.*, *Arenson*, 164 F.R.D. at 662.

Defendant contests numerosity on essentially two grounds. First, Defendant maintains that the information in the CMS's Minimum Data Set is insufficient because it is "based on data from residents of both Medicare and Medicaid certified nursing homes." (D.E. 14 at 6.) Second, Defendant argues that "[i]t may very well be the fact that the majority of these residents who are 'bedfast all or most of the time' or 'totally dependent on others to leave their room' are convalescing from broken hips, or have other age-related medical conditions that make it difficult or impossible to ambulate." (D.E. 33 at 4.) Thus, Defendant asserts, because such residents "may suffer from medical conditions that place them in those categories, but would not be considered disabled or have medical need for a motorized wheelchair," Plaintiff cannot rely on the statistics from the Minimum Data Set. (*Id.*) The Court respectfully disagrees with both of these arguments.

As for the contention that the Minimum Data Set information is inadequate because it includes data from both Medicare and Medicaid certified nursing homes, this argument fails to

account for the fact that, as noted above, the Minimum Data Set itself shows that over half of the

persons residing in Illinois nursing homes are Medicaid recipients. It is therefore fair to assume

for purposes of the numerosity analysis that half of the residents in the relevant categories receive

Medicaid (indeed, the percentage of residents receiving Medicaid is likely higher within these

categories than the overall population of Illinois nursing home residents because, by definition,

the residents in these categories are among the most severely disabled and therefore are more

likely to be in need of financial assistance). As noted above, it is appropriate for the Court to

make such common sense assumptions in determining whether the numerosity requirement is

met. *See, e.g., Vergara v. Hampton*, 581 F.2d 1281, 1283-84 (7th Cir. 1978) (holding that where

plaintiffs "sought to bring the action on behalf of themselves 'and all other nationals and citizens

of foreign states living in Illinois who have been admitted into Illinois for permanent residence

and who desire to apply and be eligible for appointment in the United States Civil Service' . . . .

[t]he numerosity requirement was satisfied by the census figures as to resident aliens in Illinois

and the number of federal Civil Service positions in that state.").[4] Applying this assumption

---

[4] *Accord, e.g., Arenson*, 164 F.R.D. at 662-63 & n.2 ("The Court is also permitted to make the common sense assumption that most residents at a nursing home receive medication or medical supplies at some point in their stay."); *Gomez v. Illinois State Board of Education*, 117 F.R.D. 394, 397 (N.D. Ill. 1987) (holding that Court could find numerosity requirement met without resort to any statistical data where class was defined as "All Spanish-speaking children who are or will be enrolled in Illinois public schools, or who are eligible or will be eligible to be enrolled in Illinois public schools, and who should have been, should be, or who have been, assessed as limited English proficient."); *Miller v. Spring Valley Properties*, 202 F.R.D. 244, 248 (C.D. Ill. 2001) (holding that Plaintiffs "have made a good faith estimate of potential members of the proposed class" where, based on census data regarding the racial make-up of the residents and occupants of rental units in the county it could be reasonably assumed that 10-15 percent of 1200 applicants for housing with Defendant were African American); *Verdow v. Sutkowy*, 209 F.R.D. 309, 312 (N.D. N.Y. 2002) (holding numerosity was sufficiently shown where the "Plaintiffs claim[ed] that six persons in Cayuga and Onondaga counties were denied Medicaid

yields an estimate that more than 7,500 nursing home residents receiving Medicaid were totally dependent on others to leave the room (even with a wheelchair), more than 800 were "bedfast all or most of the time," and more than 200 have quadriplegia (the larger numbers being cumulative of the smaller). The Court need not tack close to the wind in finding that the numerosity requirement is satisfied: if even the smallest of these numbers is used for numerosity purposes, it is evident that joinder would be impracticable.[5]

With respect to Defendant's argument that the data regarding the "totally dependent" and "bedfast" residents is deficient because the residents in these categories may have medical conditions, such as convalescing from a broken hip, for which a motorized wheelchair would not be medically necessary, this argument fails for at least two independent reasons. First, as noted above, the Minimum Data Set shows that approximately 465 nursing home residents in Illinois have quadriplegia, of which it can be reasonably assumed that about half receive Medicaid. Defendant does not dispute that quadriplegia is a serious enough condition to medically warrant a

---

benefits within the previous six months on the basis of the challenged policy. . . . If the six known denials occurring with the previous six months are extrapolated statewide based on the year 2000 percentage, plaintiffs claim a class membership of 226 persons."); *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D. N.Y. 2001) ("[I]f this Court were to assume that 1% of the total stops made by the SCU in 1998 lacked reasonable suspicion, the total number of claims would be 270 . . . . Accordingly, the size of the putative class is sufficiently large such that the joinder of all members is impracticable, favoring class litigation.").

[5] Given the statistics Plaintiff has provided from the Centers for Medicare and Medicaid Services of the U.S. Department of Health and Human Services regarding the numbers of nursing home residents in Illinois who receive Medicaid, who are totally dependent on others to leave the room (even with wheelchairs), who are bedfast all or most of the time, or who have quadriplegia, this is not a case like *Valentino v. Howlett*, 528 F.2d 975 (7th Cir. 1976), relied upon by Defendant, where on the motion for class certification "the district court was not provided with any proof that the class was so numerous that joinder was impracticable" and on a motion for reconsideration was provided only with "conjecture." *Valentino*, 528 F.2d at 978-79.

motorized wheelchair. Indeed, three of the named Plaintiffs suffer from quadriplegia, (D.E. 8, ¶¶ 9, 11, 12), and Defendant not only did not raise this as a basis to dispute their adequacy as named Plaintiffs, but, as noted above, Defendant provided each of these Plaintiffs with a motorized wheelchair subsequent to the filing of this suit and the motions for class certification. As noted above, even if the class size is restricted to the estimate of 200 residents that have quadriplegia and are receiving Medicaid, the numerosity requirement is easily satisfied.[6]

Second, although some nursing home residents may be bedfast or totally dependent because they have temporary conditions, such as a broken hip, for which a motorized wheelchair would not be medically necessary, it is common knowledge that nursing homes are generally for

---

[6] Although Defendant does not raise the issue, the Court notes that because Plaintiffs have, as mentioned above, alleged and provided evidence of Defendant's blanket policy "that power w/cs [wheelchairs] are not approved for clients in nursing homes," (D.E. 24, Exhibit A), Plaintiffs need not, for purposes of establishing that the numerosity requirement is met, provide specific evidence as to which residents were not provided a motorized wheelchair. *See, e.g.*, *Miller*, 202 F.R.D. at 248 (holding, where plaintiffs "presented a colorable claim of discrimination in housing," that numerosity requirement was met where census data indicated that 10-15 percent of 1200 applicants for housing with Defendant were African American); *Allen v. Chicago Transit Authority*, No. 99-7614, 2000 WL 1207408, *7 (N.D. Ill. July 31, 2000) (holding, in finding numerosity requirement was met, that plaintiffs were not required to show how many of the potential class members actually claimed that they were discriminated against on account of their race where the plaintiffs alleged that "the CTA has over 470 African-American employees and that it has engaged in a pattern or practice of widespread discrimination" and asserted "that discovery has revealed more than three dozen other CTA employees who have filed complaints alleging discrimination."); *Resnick v. American Dental Association*, 90 F.R.D. 530, (N.D. Ill. 1981) (holding that numerosity requirement was met where "plaintiffs allege that a policy of discrimination has been applied" to proposed employee class and there were more than 200 employees at issue). Moreover, the Minimum Data Set information indicating that approximately 7500 nursing home residents receiving Medicaid are totally dependent on others to leave the room (even with wheelchairs) suggests that these residents do not have motorized wheelchairs. The Court also notes that through interrogatories and document requests, Plaintiffs sought information from Defendant relating to the data underlying the Minimum Data Set and other information relevant to numerosity but Defendant objected on various grounds to providing the requested facts and materials. (D.E. 33, Exhibit B).

those in need of long term care. In fact, the "Informational Notice" issued by the Illinois Department of Aid that Defendant has relied on in opposing class certification itself refers to nursing homes as "long term facilities." (D.E. 17, Exhibit B.) Thus, there is little reason to believe that the estimates that more than 7,500 nursing home residents receiving Medicaid were totally dependent on others to leave the room, and that more than 800 were "bedfast all or most of the time," should be significantly reduced. Furtheremore, even if only a relatively small portion of either of these populations are used (*e.g.*, 1% and 10%, respectively) as estimates of the class size, joinder is impracticable and numerosity satisfied under precedent applying Rule 23(a).

Moreover, in addition to the estimated size of the class, all of the other considerations previously identified by the courts as pertinent to the numerosity analysis, the geographic dispersion of the class, the ability of individuals to bring their own claims, and the relief sought, also weigh in favor of a determination that joinder is impracticable on the facts of this case. Because the class members reside throughout the state, and because they are disabled and therefore are often of limited financial resources, joinder would be particularly difficult in this case. *See, e.g.*, *Arenson*, 164 F.R.D. at 663 ("Class members who are residents of a nursing home may also lack the ability to pursue their claims individually."); *Raymond v. Rowland*, 220 F.R.D. 173, 179 (D. Conn. 2004) (finding, as to class of disabled recipients of state aid, that "[t]hese factors all speak in favor of certification: the Plaintiffs are dispersed throughout the state; they are by definition people of limited financial resources, they mostly lack the legal

11

sophistication and financial wherewithal to bring individual suits. . . .").[7]

For the foregoing reasons, the Court finds that Plaintiffs have met the numerosity requirement.

B.    Commonality

For purposes of the commonality requirement of Rule 23(b)(2), "[n]ot all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." *Jones v. Risk Management Alternatives, Inc.*, No. 02-9392, 2003 WL 21654365, *2 (N.D. Ill. July 11, 2003) (quoting *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986)). "The fact that there is some factual variation among the class grievances will not defeat a class action. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (internal citation omitted). "Where a common question of law refers to standardized conduct by defendants toward members of the putative class, a common nucleus of operative fact is typically presented, and the commonality requirement is usually met." *Jones v. Risk Management Alternatives, Inc.*, No. 02-9392, 2003 WL 21654365, *2 (N.D. Ill. July 11, 2003) (citing *Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993)).

Citing *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415 (N.D. Ill. 2003), Defendant states in its initial brief in opposition to class certification, that "[t]o the extent a party attempts to

_____

[7] Because, in concluding that the numerosity requirement has been met, the Court has not relied on the difficulty of identifying future class members, the Court does not need to assess Defendant's argument that, in light of the Informational Notice, "claims of potential future class membership are speculative, at best, and not a proper basis to certify [a] class on numerosity." (D.E. 14 at 8.)

maintain a pattern or practice discrimination class action, he or she must demonstrate more than a shared membership in a protected class, but must offer sufficient evidence to bridge the gap between his or her own individual claim and those of the class members who suffered the same injury." (D.E. 14 at 8.) Defendant contends that Plaintiffs have not met this burden and that, consequently, the commonality requirement is not satisfied. The Court respectfully disagrees.

In *Ellis*, the Court recognized that a discrimination suit arising out of a "standard operating procedure, is well-suited to class adjudication." *Ellis*, 217 F.R.D. at 422. Although the court found that the plaintiffs failed to meet their burden of showing a common question of law or fact, it did so on grounds that the plaintiffs in that case merely asserted that "their allegation that Elgin engaged in a pattern or practice of discrimination is sufficient to establish commonality," without supporting evidence and in the face of uncontroverted evidence that the defendant's decisionmaking process was decentralized and subjective. *Id.* at 425-28.

Such is not the case here. Rather, in the instant suit, as noted above, Plaintiffs have provided evidence that Defendant has a broad policy, articulated by the Supervisor of Durable Medical Equipment & Ancillary Services for the Illinois Department of Public Aid, "that power w/cs [wheelchairs] are not approved for clients in nursing homes," (D.E. 24, Exhibit A), and have presented evidence that approximately 7500 Illinois nursing home residents receiving Medicaid have not received motorized wheelchairs (in that they are totally dependent on others to leave the room even with their wheelchairs). Where such evidence of a broad discriminatory policy is adduced, courts have held that the commonality requirement is satisfied. *See, e.g.,* *Radmanovich v. Combined Ins. Co. Of America*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (holding that commonality requirement was met in pattern or practice case where the plaintiff "purport[ed]

13

to offer both statistical evidence that establishes discrimination, as well as declarations of potential class members that describe a series of discriminatory acts by [defendant]."); *Hill v. Shell Oil Co.*, No. 98-5766, 2002 WL 663583, *3 (N.D. Ill. Mar. 28, 2002) (commonality requirement met in pattern or practice case where the plaintiffs "offered numerous customer declarations and customer complaints of allegedly discriminatory treatment in addition to their own testimony of alleged discrimination.").

While Defendant has submitted evidence it contends supports the conclusion that it does not have a policy which discriminates against disabled nursing home residents (*i.e.*, the Informational Notice and an Illinois Department of Public Aid rule stating that standard wheelchairs are "a part of the per diem reimbursement paid by the Department" to "long term care facilities," 89 Ill. Adm. Code 140.476), the Court's role in deciding a motion for class certification does not involve deciding the ultimate merits of Plaintiff's suit. *See, e.g., Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 437 (N.D. Ill. 2003) ("Both parties spend a great deal of time discussing Ms. Palmer's pattern or practice evidence in their briefs. However, I cannot consider the merits of Ms. Palmer's claims . . . . Ms. Palmer has properly pled a pattern or practice case, and although it is possible that she may be wrong or simply unable to prove her case, the pleadings and evidence presented meet the commonality and typicality requirements."); *Hill*, 2002 WL 663583, at *3 ("While the merits of the discrimination claims have yet to be determined, at this stage plaintiffs have offered adequate evidence beyond the complaint's allegations to establish commonality.").

Thus, inasmuch as Plaintiffs have alleged and presented evidence that the class was subjected to Defendant's broad discriminatory policy and practice of not providing required

motorized wheelchairs to disabled nursing home residents receiving Medicaid, the commonality requirement is satisfied.[8] *See, e.g., Flanagan*, 2004 WL 1403817, at *3 (collecting cases); *accord, e.g., Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 426 (5th Cir. 1997) ("[A]llegations of similar discriminatory practices generally meet the commonality requirement.").

C.    Typicality

"[A] 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Rosario*, 963 F.2d at 1018 (quoting *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of the Southwest*, 457 U.S. at 158 n.13; *see Rosario*, 963 F.2d at 1018 ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality."). "The typicality requirement may be satisfied even if there

---

[8] The Court notes that, given that Plaintiffs are not challenging how Defendant makes medical necessity determinations but are only seeking to ensure that such determinations are made for nursing home residents, the Court will not need to make plaintiff-by-plaintiff medical necessity inquiries and decisions in this case. The Court also notes that it respectfully rejects Defendant's argument that "Plaintiffs' Supplemental Memorandum concerning 'medical necessity' only pertains to Counts I and II of Plaintiffs' Amended Complaint, since by definition 'medical necessity' is a Medicaid concept. Plaintiffs give no analysis about how the Court would fashion a class remedy under the ADA and Section 504, if such relief were warranted. Plaintiffs' Supplemental Memorandum is, therefore, incomplete and inadequate." (D.E. 14 at 10.) Because Plaintiffs' Supplemental Memorandum explained that the Court would not need to make medical necessity determinations, it served the purpose of clarifying that individual medical necessity determinations would not present a barrier to the ability of the Court to fashion class-wide relief (for any of Plaintiffs' claims). Moreover, while Plaintiffs appear to be seeking relief that will require Defendant to make medical necessity determinations for nursing home residents, whether such relief is available under the ADA and Section 504 is an issue that goes to the merits and in any event can be decided after certification.

are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). In conjunction with the typicality prerequisite of Rule 23, courts also require that each named plaintiff "be a member of the class." *Dean v. International Truck and Engine Corp.*, 220 F.R.D. 319, 321 (N.D. Ill. 2004).

Aside from the arguments Defendant also raised with respect to the commonality requirement (i.e., that Plaintiffs have not presented sufficient evidence of a broad discriminatory policy or practice and that Defendant has offered opposing evidence), which fail for the reasons discussed above, Defendant has asserted essentially two challenges which relate to Plaintiffs' ability to satisfy the typicality prong of Rule 23. First, Defendant asserts that Plaintiffs cannot represent the class because the Plaintiffs have failed to state claims for relief. Second, Defendant contends that because Defendant provided Plaintiffs with wheelchairs while the class certification motion was pending, they are no longer members of the proposed class. The Court respectfully disagrees with both of Defendant's arguments.

### 1. Plaintiffs' Ability to State Claims

Defendant's argument that Plaintiffs have not met the typicality requirement because they have failed to state claims for relief (which Defendant contends he establishes in his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)) is without merit for two independent reasons. First, as noted above, the Supreme Court has taught that "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action . . . ." *Eisen*, 417 U.S. at 178 (internal quotation omitted). Second, although "the

16

presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality," *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980), the defenses Defendant has asserted are not peculiar to the named Plaintiffs or a small subset of the plaintiff class. Indeed, Defendant admits that the grounds on which it has moved to dismiss pertain not only to the named Plaintiffs, but apply equally to the unnamed members of the class. (D.E. 14 at 4) ("If Plaintiffs are found here not to have enforceable rights and their claims were dismissed, the basis for the Court's ruling would apply equally to any other member of the class.") Therefore, these potential defenses, which are generally applicable to the named Plaintiffs and the class, will not prevent the Plaintiffs from meeting the typicality requirement. *See, e.g., Ludwig v. Pilkington North America, Inc.*, No. 03-1086, 2003 WL 22478842, *3 (N.D. Ill. Nov. 4, 2003) (holding that statute of limitations defense did not defeat typicality because "[t]he statute of limitations defense does not appear to be a defense limited to the named plaintiffs or a small subset of plaintiffs.").[9]

   2.   Plaintiffs' Receipt of Motorized Wheelchairs

Nor are Plaintiffs barred from meeting the typicality requirement by the fact that they

---

[9] Defendant "requests that this Court exercise its discretion and defer its decision on class certification pending the outcome of Defendant's Motion to Dismiss." (D.E. 14 at 4.) In the interest of judicial economy, the Court respectfully declines Defendant's request. As noted above, the grounds of Defendant's motion to dismiss pertain not only to the named Plaintiffs but also apply equally to the class. Therefore, resolution of the motion to dismiss after certification will avoid duplicative litigation of the issues raised therein. In fact, if Defendant is successful on its motion, it will benefit the Defendant to have had the class certified before dismissal because such dismissal will serve as res judicata with respect to the class as a whole rather than just as to the named Plaintiffs. Moreover, precedent teaches that the propriety of class certification *vel non* generally should be resolved before examination of the merits of a case. The Court today takes that presumptive path.

received motorized wheelchairs from Defendant after moving for certification.[10] In

circumstances such as this, where a governmental defendant provides a plaintiff a benefit after

the plaintiff filed suit and sought class certification, courts have held that "class certification

should be seen as 'relating back' to" the outset of the suit or the filing of the motion for class

certification with the effect that issues such as the named plaintiff's membership in the class are

addressed in terms of the circumstances that existed at that time the complaint or the motion for

class certification were filed. *Wright v. Califano,* 587 F.2d 345, 350 (7th Cir. 1978) (citing *White

v. Matthews,* 559 F.2d 852, 857 (2d Cir. 1977)); *see White,* 559 F.2d at 858 ("White was not a

member of the class when it was certified, but as we have just explained, certification can relate

back. . . ."); *accord, e.g., Kazarov v. Achim,* No. 02-5097, 2003 WL 22956006, *7 (N.D. Ill. Dec.

12, 2003) ("[Defendant] does argue that Kazarov is not an adequate class representative

petitioner because he is no longer a member of the proposed class. However, courts have found

that a mooted plaintiff can satisfy the requirement of adequate representation necessary for class

certification"); *Jackson v. Foley,* 156 F.R.D. 538, 543 (E.D. N.Y. 1994) ("Generally, named

plaintiffs must present a live controversy and be a member of the class which he or she seeks to

represent. . . . [However] without class certification 'relating back' to the filing of the complaint,

the issue of the defendants' administration of the REFA program would evade review . . . .It

would be unfair to allow the controversy to be mooted in this manner.").

---

[10] Although Defendant asserts that one Plaintiff now lives in the community, as
mentioned above, Defendant does not identify this Plaintiff or present any evidence on this point,
which Plaintiffs dispute. If Defendant can identify the Plaintiff he contends lives in the
community and can present evidence to support this assertion, he may file a motion seeking to
remove that Plaintiff as a class representative. The Court will consider the merits of such a
motion if and when it is filed.

In *Wright*, the plaintiff brought suit against the Secretary of the United States Department of Health, Education and Welfare alleging that the Social Security Administration's failure to provide a hearing regarding an appeal of a denial of benefits within a reasonable period of time violated the Social Security Act. *See Wright*, 587 F.2d at 347-48. After the plaintiff moved for class certification, but before the district court certified a class, the plaintiff received a hearing from the Social Security Administration. *Id.* at 350. The defendant argued that "the named plaintiff's claim was not representative of those of the class, in that he had already received a hearing and Appeals Council decision before the class was certified rendering his claim moot." *Id.* The Seventh Circuit rejected this argument and held that the plaintiff's "claim was not moot at the outset of the suit and for the reasons stated by the Second Circuit in *White* [*v. Mathews*, 559 F.2d 852, 857 (2d Cir. 1977)], we believe that the class certification should be seen as 'relating back' to that point in time." *Id.* The portion of *White v. Mathews* that the Seventh Circuit referenced states that the "question is whether to allow class certification in this case to relate back . . . Refusing to do so would mean that the SSA could avoid judicial scrutiny of its procedures by the simple expedient of granting hearings to plaintiffs who seek, but have not yet obtained, class certification." *White*, 559 F.2d at 857. The Second Circuit went on to say that "[w]e do not suggest that this occurred here, but we must take notice of the 'reality' of that possibility in the future" and held that certification related back to the time the motion for class certification was filed. *Id.* at 857.

While the Court is not suggesting that Defendant provided motorized wheelchairs to the Plaintiffs in order to avoid judicial scrutiny of its policies, the Court, as did the Seventh Circuit in *Wright* and the Second Circuit in *White*, must acknowledge the reality of that possibility in the

19

future and allow certification to relate back to the time the motion for class certification was filed. At that time, none of the Plaintiffs had been provided motorized wheelchairs by Defendant or their respective nursing homes and were therefore members of the class. Thus, because the Plaintiffs claims arise from the same course of conduct, *i.e.*, Defendant's alleged policy of not providing motorized wheelchairs to nursing home residents, that gives rise to the claims of the other class members and the Plaintiffs' and class members claims are all based on the same legal theory, the Court holds that the typicality requirement is satisfied. In addition, as discussed elsewhere, the fact that Plaintiffs are reasonably likely to need replacement wheelchairs at future points in life also helps to ensure that Plaintiffs' claims and interests are sufficiently typical of those of the other members of the proposed class.

      D.     Adequacy of Representation

      "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members. Therefore, [a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (internal quotations and citation omitted). Defendant does not dispute the adequacy of Plaintiffs' counsel. Inasmuch as Plaintiffs' counsel have identified more than two dozen cases in which they have represented disabled persons in civil rights actions, many of them class action suits, since 1977, (D.E. 10 at 8-10), and given that Plaintiffs' counsel have competently and vigorously represented the interests of Plaintiffs and the proposed class in this case, the Court finds that the first prong of the adequacy of representation test is met.

      As to the second prong, Defendant contends that the Plaintiffs' individual claims are

20

moot because they have been provided with motorized wheelchairs and that, as a result,

"Plaintiffs would not necessarily represent the interest of the purported class."[11] (D.E. 33 at 5.)

Although, as explained below, the issue is not determinative, the Court notes that it is unclear

whether the named Plaintiffs' claims are actually moot. "A defendant carries a heavy burden

when it argues that a plaintiff's claims are moot. . . ." *Edwards v. Illinois Board of Admissions to

the Bar*, 261 F.3d 723, 728 (7th Cir. 2001). "A case is moot if there is no possible relief which

the court could order that would benefit the party seeking it." *In re Envirodyne Indus. Inc.*, 29

F.3d 301, 303 (7th Cir. 1994). Here, it is not clear that there is no possible relief which the court

could order that would benefit Plaintiffs because in filing suit, the Plaintiffs were not simply

seeking motorized wheelchairs. Rather, Plaintiffs have requested that the Court "issue

preliminary and permanent injunctive relief to enjoin Defendant from denying Plaintiffs and class

members necessary motorized wheelchairs and from failing to ensure that nursing facilities

provide such wheelchairs." (D.E. 8, Prayer for Relief.) Inasmuch as Plaintiff Schneider has

alleged that his need for a motorized wheelchair arose because his first motorized wheelchair is

broken down, (D.E. 8, ¶ 35), and given that Plaintiffs range in age from 26 to 63, (D.E. 8, ¶¶ 7-

12), it is reasonable to expect that at least some, and potentially all, of the Plaintiffs will need a

---

[11] Defendant has not argued that the supposed mootness of Plaintiffs' individual claims renders this entire case moot. Furthermore, it is well established that "under state as under federal law, the mooting of the named plaintiff's claim in a class action by the defendant's satisfying the claim does not moot the action so long as the case has been certified as a class action, or, as in this case, so long as a motion for class certification has been made and not ruled on, unless (as is not the case here) the movant has been dilatory." *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546-47 (7th Cir. 2003); *see Susman v. Lincoln American Corp.*, 587 F.2d 866, 870 (7th Cir. 1978) ("when a motion for class certification has been pursued with reasonable diligence and is then pending before the district court, a case does not become moot merely because of the tender to the named plaintiffs of their individual money damages.").

replacement wheelchair at some point. Thus, Plaintiffs will likely benefit from a permanent injunction assuring that Defendant will not be able to deny Plaintiffs motorized wheelchairs in the future.[12] It therefore appears that their individual claims are not moot. *See Carr v. Wilson-Coker*, 203 F.R.D. 66, 76 (D. Conn. 2001) (holding that the claims of Medicaid recipients seeking injunctive relief regarding the state's provision of dental services were not moot because even though the plaintiffs "received dental services since the filing of the complaint, because the plaintiffs allege that the defendant's policy and practice is continuing and that the plaintiffs' needs for dental services are ongoing, the plaintiffs remain at risk of future harm by virtue of the alleged policy and practice of the defendant."); *see also Dajour v. The City of New York*, No. 00-2044, 2001 WL 1173504, *9 (S.D. N.Y. Oct. 3, 2001) ("To the extent the defendants have attempted to argue that the claims of the named plaintiffs are moot, the argument is without merit. . . . [T]here is sufficient evidence that the plaintiffs may benefit from future periodic screening, diagnoses, and information, in case their illnesses or circumstances change.").

However, as indicated above, the Court need not reach the issue of whether the Plaintiffs' individual claims are in fact moot because "the mooting of the class representative's personal claim does not bar him from continuing to represent the class, as otherwise defendants might delay the grant of relief in class actions indefinitely by buying off the class representatives in

---

[12] Should Plaintiffs prove their claims, Defendant's Informational Notice will not necessarily eliminate the need for an injunction. *See Edwards v. Illinois Board of Admissions to the Bar*, 261 F.3d 723, 728 (7th Cir. 2001) ("[A] defendant can not moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time."); *Sasnett v. Litscher*, 197 F.3d 290, 291-92 (7th Cir. 1999) (holding that suit was not moot and that injunction may be necessary where state replaced the challenged regulation but could still reinstate it).

succession." *See Kifer v. Ellsworth*, 346 F.3d 1155, 1156 (7th Cir. 2003) (internal citations omitted). In this regard, many courts have found a named plaintiff could be an adequate class representative after his or her individual claims were moot "where it is unlikely that segments of the class . . . would have interests conflicting with those [the representative] has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *accord, e.g., Wright*, 587 F.2d at 350; *Doe v. Mundy*, 514 F.2d 1179, 1181-82 (7th Cir. 1975); *Kazarov v. Achim*, No. 2003 WL 22956006, at **6-7; *Dajour*, 2001 WL 1173504, *9-10. In the present case, Defendant has not identified any interests of the named Plaintiffs that conflict with those of the class and the Court is not otherwise aware of any. At the same time, the named Plaintiffs and the class share the common interest of ensuring that Defendant will provide medically necessary motorized wheelchairs to nursing home residents in the future. Furthermore, as noted above, the interests of the class have been competently urged in this proceeding and the Court has been given no reason to believe such representation will not continue. Indeed, now that the named Plaintiffs have motorized wheelchairs, their ability to participate in the case may well have increased, at least in terms of their capability to attend hearings, depositions and any trial that might occur. Accordingly, the Court holds that the Plaintiffs are adequate class representatives.

     E.     Definitiveness of the Class Definition

     "A class can be properly identified so long as it is defined by objective criteria, such that it is administratively feasible for the court to determine whether a particular individual is a class member." *Ludwig v. Pilkington North America, Inc.*, No. 03-1086, 2003 WL 22478842, *1 (N.D. Ill. Nov. 4, 2003) (internal citation omitted); *accord, e.g., LeClerq v. The Lockformer Co.*,

No. 00-7164, 2001 WL 199840, *6 (N.D. Ill. Feb. 28, 2001) ("An identifiable and definite class

exists if 'its members can be ascertained by reference to objective criteria.'") (quoting *National*

*Organization for Women v. Scheidler*, 172 F.R.D. 351, 357 (N.D. Ill. 1997)). A class is not

sufficiently definite where "membership in the class [is] contingent on the state of mind of the

prospective class members." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 978 (7th

Cir. 1977).

As set forth above, the proposed class is defined as "all persons with disabilities who are

or will be recipients of Illinois' Medicaid program, who reside in Medicaid-funded nursing

homes and for whom motorized wheelchairs are medically necessary, but who have not been

provided with such equipment." (D.E. 10 at 1.) The only objection Defendant has made

regarding the class definition is that the phrase "Medicaid-funded nursing homes" is "vague and

imprecise" because "[t]here are no state-funded nursing homes. There are, however, nursing

homes that receive payments as providers of goods or services to persons eligible for medical

assistance from the State of Illinois." (D.E. 14 at 5.). Because Plaintiffs take the phrase

"Medicaid-funded nursing homes" to be a short-hand way of expressing exactly what Defendant

contends is the correct description of the nursing homes at issue, *i.e.*, "nursing homes that receive

payments as providers of goods or services to persons eligible for medical assistance from the

State of Illinois," (D.E. 24 at 7-8 n.8), this phrase should not interfere with the identification of

class members. Thus, inasmuch as the class definition is not contingent on the state of mind of

the prospective class members and is defined by objective criteria such that the Court can

feasibly determine whether an individual is a class member, the Court holds that the class is

properly defined.

24

Having determined that the express and implied prerequisites of Rule 23(a) are met, the Court turns to the requirements of Rule 23(b)(2).

F.    23(b)(2)

Defendant does not contest Plaintiffs' ability to satisfy Rule 23(b)(2). As noted above, Rule 23(b)(2) allows for class certification where the requirements of Rule 23(a) have been met, and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

Because Plaintiffs have alleged and presented evidence that Defendant has refused to act on grounds generally applicable to the class (*i.e.*, that Defendant has refused to provide motorized wheelchairs to disabled nursing home residents receiving Medicaid) and final injunctive or corresponding declaratory relief with respect to the class as a whole may be appropriate if Plaintiffs can ultimately prove their claims, certification is proper under Rule 23(b)(2). This conclusion is buttressed by the many cases in which courts have certified classes under Rule 23(b)(2) where Medicaid recipients have sought to enforce their rights to benefits. *See, e.g., Marisol v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997); *Baby Neal v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994); *Hillburn v. Maher*, 795 F.2d 252, 255 (2d Cir. 1986) (district court certified class of all "Medicaid recipients residing in or admitted to Skilled Nursing Facilities in the State of Connecticut on or after February 18, 1982, who, under defendant's policies and practices, cannot obtain the adaptive wheelchairs necessary to maintain their health and insure their effective development."); *Raymond v. Rowland*, 220 F.R.D. 173, 181 (D. Conn. 2004); *Verdow*, 209 F.R.D. at 313; *Rancourt v. Concannon*, 207 F.R.D. 14, 16 (D. Maine 2002); *Boulet v.*

*Cellucci*, 107 F. Supp. 2d 61, 81 (D. Mass. 2000).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is granted.

Mark Filip
United States District Judge
Northern District of Illinois

Enter: *August 16, 2004*